**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LATONYA JOHNSON, | ) | No. SA CV 17-735-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**<u>PROCEEDINGS</u>**

Plaintiff filed this action on April 21, 2017, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on May 10, 2017, and May 23, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on January 10, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

**BACKGROUND**

Plaintiff was born on April 23, 1970. [Administrative Record ("AR") at 30, 142.] She has no past relevant work experience. [AR at 30, 59.]

On December 31, 2013,[1] plaintiff protectively filed an application for SSI payments, alleging that she has been unable to work since June 1, 2011. [AR at 22, 31, 142-63.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 22, 101.] A hearing was held on July 23, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-64.] A vocational expert ("VE") also testified. [AR at 58-62.] On August 25, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from December 31, 2013, the date the application was filed. [AR at 22-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15.] When the Appeals Council denied plaintiff's request for review on February 22, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] The ALJ also indicated that the application was filed on November 27, 2013 [AR at 28]; it appears that December 31, 2013, is the correct date. [AR at 22, 31, 142.]

conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.
If the claimant has a "severe" impairment or combination of impairments, the third step requires
the Commissioner to determine whether the impairment or combination of impairments meets or
equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart
P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the
claimant's impairment or combination of impairments does not meet or equal an impairment in the
Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient
"residual functional capacity" to perform her past work; if so, the claimant is not disabled and the
claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past
relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets
this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears
the burden of establishing that the claimant is not disabled, because she can perform other
substantial gainful work available in the national economy.  Id.  The determination of this issue
comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920;
Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since
December 31, 2013, the application date. [AR at 24.]  At step two, the ALJ concluded that plaintiff
has the severe impairments of fibromyalgia and hip bursitis.  [Id.]  The ALJ found plaintiff's
impairments of human papilloma virus infection, rhinitis, and anxiety disorder to be nonsevere.
[AR at 24-25.]  At step three, the ALJ determined that plaintiff does not have an impairment or a
combination of impairments that meets or medically equals any of the impairments in the Listing.
[AR at 26.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2]

_____

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional
limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
(continued...)

to perform a range of medium work as defined in 20 C.F.R. § 416.967(c),[3] as follows:

> [Plaintiff] can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; she requires the ability to stand and stretch every hour for approximately one to three minutes per hour, and if standing, sit every hour for approximately one to three minutes per hour; she can frequently climb stairs, but she cannot use ladders[,] ropes or scaffolds; she cannot balance; she can frequently stoop, kneel, crouch, and crawl; and she must avoid concentrated exposure to unprotected heights and moving dangerous machinery.

[Id.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 29, 59.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "hand packager" (Dictionary of Occupational Titles ("DOT") No. 920.587-018) and "linen room attendant" (DOT No. 222.387-030). [AR at 30, 60.] Accordingly, the ALJ determined that plaintiff was not under a disability since December 31, 2013, the date the application was filed. [AR at 31.]

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she: (1) determined plaintiff's mental impairment was nonsevere; and (2) rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

## A.    STEP TWO

### 1.    Legal Standard

At step two of the five-step process, plaintiff has the burden to provide evidence of a

_____

[2](...continued)
1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 416.908 (effective through March 26, 2017). The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 416.928 (effective through March 26, 2017). "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). An impairment or combination of impairments should be found to be nonsevere only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 416.921(a) (effective through March 26, 2017). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling . . . ." 20 C.F.R. § 416.921(b) (effective through March 26, 2017). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. <u>See</u> Soc. Sec. Ruling ("SSR")[4] 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." <u>Webb</u>, 433 F.3d at 687 (citing <u>Yuckert</u>, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

### 2. The ALJ's Step Two Finding

The ALJ found plaintiff's medically determinable mental impairment of anxiety disorder to be nonsevere because it does not cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities. [AR at 25.] The ALJ specifically stated the following:

> Despite [plaintiff's] complaints of [memory issues, difficulty with concentration, task completion, social isolation, and trouble getting along with others], her treatment records show no longitudinal history of formal mental health treatment. The records show she had been taking Xanax for anxiety since 2008. In May of 2014, [plaintiff] attributed her anxiety symptoms to increased family stressors since 2013 and she wanted assistance with stress management and setting limitations with her family. She also said she did not like medications, but was willing to attend stress classes. She noted no depressive symptoms at the time. [Plaintiff] has remained on Xanax and Trazadone (for sleep) prescribed by her primary care doctor, but there is no evidence to show she has undergone psychotherapy during the relevant period; nor has she require[d] acute care for worsening anxiety symptoms or depression. [Her] treatment notes show treatment largely for her pain complaints. At the hearing, she testified to minimal anxiety symptoms.

> As for the paragraph B criteria, . . . [plaintiff] has reported a number of activities of daily living and social interactions that are not consistent with a debilitating psychiatric condition. She has been able to work part-time as a playground supervisor and she endorsed only physical limitations associated with this work. .

    [4] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

. . Her statements and the scant mental health records show mild functional limitations at most, largely due to pain and fibromyalgia symptoms, rather than due to her anxiety disorder or other psychiatric impairments. Thus, the undersigned finds [plaintiff's] anxiety disorder is nonsevere.

[Id. (citations omitted).]

### 3.    The Parties' Contentions

Plaintiff argues that the ALJ's decision with respect to plaintiff's anxiety "does not have the support of any physician who actually reviewed the entirety of [her] medical records." [JS at 6 (citing AR at 24-26).] She notes that on February 14, 2014, the State agency non-examining physician reviewed the field office recommendation that plaintiff's conditions are stable and nonsevere, and on March 14, 2014, another State agency non-examining medical physician affirmed that initial determination. [Id. (citing AR at 79-80).] She also states that no psychological consultative examination was ordered by the ALJ, and the State agency reviewing doctors "reviewed only 217 pages of medical records versus the 1194 total pages of medical records."[5] [JS at 6 (citing AR at 24-26, 69, 79-80, 479-1439).]

Second, plaintiff argues that the ALJ's determination that plaintiff testified as to "mostly physical symptoms is not correct." [Id. (citing AR at 25).] In support, she points to her testimony that she experiences anxiety two to three times a month, as well as an anxiety attack lasting for a couple of hours "maybe once a month." [Id. (citing AR at 50).] Additionally, although she testified that she used to see a "pain therapist once a month regarding anxiety," she also testified that "right when [she] started seeing [the therapist] her [plaintiff's] nephew passed away, so [she] just kind of zoned out from [the therapy]." [JS at 6; AR at 51]. She asserts that the "fact that her nephew passed away and she zoned out, seems very reasonable and consistent with the Ninth

---

[5]    Defendant points out that the record contains many duplicate notes, including 569 pages of Kaiser records submitted by plaintiff's attorney [AR Ex. B8F] that are duplicative of notes that were already in the record [AR Ex. B6F]. [JS at 14-15 n.3 (comparing AR at 518-754 with 816-1384).] Defendant also points out that many of the Kaiser notes contain empty data fields and error reports that "are not particularly relevant." [Id. (citing AR at 892-939, 953-86, 989-1007, 1017-39, 1049-76).]

Circuit's holding in <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996) that 'it is common knowledge that depression is one of the most underreported [sic] illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness.'"[6] [JS at 9.] She notes that she "became tearful at the hearing," and asserts that the fact that "the ALJ was willing to post-pone [sic] the hearing because [plaintiff] was crying when discussing her anxiety . . . ," belies the ALJ's statement that plaintiff "did not testify much to her condition." [JS at 7 (citing AR at 51).]

Third, plaintiff argues that the ALJ's statement that plaintiff mostly received treatment for her pain rather than her anxiety is not supported by the record. She submits that just because her fibromyalgia and insomnia "were the primary cause of her anxiety," this "does not mean that [her] anxiety does not cause her any limitations." [JS at 7.] She refers to a number of Kaiser treatment notes that she states reflect "anxiety disorder" as an "active problem." [Id.] For instance, she cites to the following: in August 2013, she states she was "treated . . . for high anxiety" [JS at 8 (citing AR at 392)]; on May 7, 2014, she reported that she was experiencing family stressors resulting in stress, anxiety, and insomnia, and wanted assistance learning how to set limits with her family [id. (citing AR at 540)]; also on May 7, 2014, the treating provider in connection with a "Review of [Psychiatric/Behavioral] Systems," stated that plaintiff was "Negative for depression. [Plaintiff] is nervous/anxious and has insomnia," and a mental status examination on that date reflected low mood, restricted affect, normal judgment, and reasonable eye contact [id. (citing AR at 546)]; a July 28, 2014, aftercare note from a treatment visit addressed plaintiff's pain and insomnia, and stated that "insomnia can be caused by conditions such as depression or anxiety" [id. (citing AR at 575)]; a November 19, 2014, note "revealed anxiety disorder still an active problem" [id. (citing AR at 633)]; and in August 18, 2015, plaintiff was treated for lack of sleep and reported "that she continues to have anxiety." [Id. (citing AR at 1425).] Plaintiff submits, therefore, that the ALJ improperly isolated portions of the record, thereby committing legal error. [Id. (citations omitted).]

---

[6] This Court does not characterize this statement by the Ninth Circuit as a "holding" -- it is merely dicta.

Finally, plaintiff asserts that the ALJ should have ordered a consultative examination by a mental health professional "rather than render his [sic] own opinion on medical issues." [JS at 9 (citation omitted).] Because she did not order such an examination, plaintiff contends the ALJ did not meet her "special duty to fully and fairly develop the record . . . ." [Id. (citation omitted).]

Defendant responds that substantial evidence in the record supports the ALJ's finding that plaintiff's level of mental impairment was only mild and that her anxiety disorder was not severe. [JS at 9-10.] She notes that the two reviewing doctors -- Kim Morris, Psy.D., and G. Johnson, M.D. -- who reviewed plaintiff's medical records in February and March 2014 respectively, found that plaintiff's anxiety was stable with treatment and medication and resulted in no more than mild mental limitations. [JS at 10 (citing AR at 69-70, 79).] The ALJ's finding that plaintiff had only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace, was consistent with Dr. Morris' and Dr. Johnson's evaluations. [JS at 11 (citing AR at 70, 79).] Defendant observes that this finding was also consistent with plaintiff's treatment records, which "consistently indicated overall normal mental status." [Id. (citing AR at 278, 303, 388, 393, 400, 534, 555, 712, 850, 712, 1430).] Additionally, defendant states that plaintiff did not "point to any objective findings of work-related mental limitations that the ALJ did not include in the RFC," because "there were none." [JS at 12.] Although plaintiff's anxiety disorder was routinely noted on plaintiff's "active problem list," according to defendant there was only one instance referred to by plaintiff -- on May 7, 2014 -- when plaintiff's doctor found "low mood and restricted affect," which "stemmed from recent family stressors" [see id. (citing AR at 544 (noting that "[t]oday [plaintiff] has a lot of stress from family, brother tried to commit suicide, nephew had sudden death from 'heat stroke' after a basketball game"))], but just a few weeks later plaintiff's condition had improved and a progress note reflected "appropriate mood and affect." [JS at 12-13 (citing AR at 278, 303, 388, 393, 400, 534, 544, 555, 712, 850, 1430).]

/

Next, defendant states that although plaintiff received regular medical treatment, none of her doctors reported issues with memory, recall, or other significant deficits in mental functioning. [JS at 13.] As noted by the ALJ, plaintiff's treatment records showed no longitudinal history of formal mental health treatment, other than prescriptions for sleep medication and anxiety since 2008. [Id. (citing AR at 25, 47, 49-51, 211, 808).] The only indication of mental health treatment after plaintiff's application date was the May 7, 2014, visit to Melanie Aoki, Ph.D., a licensed clinical psychologist, who referred plaintiff to the psychiatry department and suggested that she attend a stress management group. [JS at 13 (citing AR at 25, 540, 573).]

Third, defendant notes that there was no evidence of psychotherapy during the relevant period or that plaintiff "required acute care for worsening anxiety symptoms or depression." [JS at 14 (citing AR at 25, 518-754).] Because the objective findings and evidence in the record was neither ambiguous nor deficient, defendant submits that the ALJ had no duty to develop the record and order a consultative examination by a mental health professional. [Id. (citations omitted).] Defendant also suggests that plaintiff's argument regarding the "voluminous medical records" that were not reviewed by the State agency doctors, is inconsistent with plaintiff's assertion that the ALJ should have further developed the record. [JS at 14-15.] According to defendant, the "hundreds of pages" of medical evidence in the record clearly reveal that plaintiff sought "little mental health treatment and had no more than mild mental limitation," and, thus, there is no evidence that the record was ambiguous or inadequate. [JS at 15 (citing AR at 25).] Defendant also points out that the ALJ did not reject any medical opinions regarding mental limitations, in part because although plaintiff had physicians and other providers who provided longitudinal treatment and were familiar with her entire medical history, none of those providers opined about any limitations resulting from plaintiff's anxiety disorder. [Id.] Furthermore, with the exception of Dr. Aoki's May 7, 2014, treatment note, plaintiff's treating providers -- Jill Gorze, M.D., Binh Nguyen, M.D., and Dr. Aoki -- reported no objective findings that would indicate any work-related mental limitations. [JS at 16 (citing AR at 534, 544-46, 555, 712, 850, 1430).]

Finally, defendant notes that the ALJ found that plaintiff had a diagnosed anxiety disorder,

but plaintiff did not show that this disorder significantly impacted her ability to do basic work activity, and "points to nothing in the record indicating that she did not have the mental capacity to do the simple, unskilled work identified by the ALJ at Step Five." [JS at 17 (citation omitted).] As a result, defendant asserts that plaintiff has not met her burden of showing that she is disabled.[7] [JS at 16 & n.5.]

### 4. Analysis

Plaintiff has not demonstrated that the ALJ erred in determining that plaintiff does not have a mental impairment that significantly limits her ability to do basic work activities, including mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations.

For example, although plaintiff argues that the ALJ's statement that plaintiff "did not testify much" about her anxiety is refuted by the fact that she became "tearful" during the hearing when discussing her anxiety, the record reflects that she became tearful while she was discussing the unexpected death of her nephew -- not her anxiety. [AR at 51 (noting that discussing the death of her nephew "just took [her] back to a moment").] Additionally, although she testified that she was scheduled to see a pain therapist for her anxiety, she testified that she has not "seen her that much because right when [she] started seeing her" was when her nephew passed away. [Id.] Plaintiff's broad statement that the treatment notes reflect that her anxiety disorder is an "active problem," also fails to provide any evidence that her anxiety disorder has any more than a minimal

---

[7] Defendant states that plaintiff previously applied for SSI and received a decision denying her application on January 22, 2001. [JS at 16 n.5.] Plaintiff did not appeal that determination of non-disability and, therefore, defendant states it was a binding determination "and created an ongoing presumption that she was not disabled." [Id. (citing Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) ("[t]he claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability")). Defendant also states, however, that because the Agency was unable to locate a copy of the previous decision, "it did not apply the Chavez presumptions to Plaintiff's December 2013 SSI claim, which is at issue here." [Id. (citing AR at 67, 83).]

effect on her ability to perform basic work activities. Indeed, there is no dispute that plaintiff has a diagnosed anxiety disorder, that it appears regularly on her treatment notes in the category of "Patient Active Problem List," or that she has been prescribed anti-anxiety medication since 2008. However, also regularly appearing on that list are plaintiff's diagnoses of chronic rhinitis, HPV infection, anemia, and fibromyalgia, among other things. [See, e.g., AR at 263, 301-02, 324, 334 (anxiety disorder noted by Dr. Nguyen to be "stable" on August 19, 2013), 377, 387, 388, 395, 399-400, 415-16, 429 (plaintiff reported "everyday [sic] stress but nothing more than usual"), 434, 534, 555, 633, and others).] Although plaintiff states that she was treated for "high anxiety" on August 9, 2013 [JS at 8 (citing AR at 392)], that note -- actually dated August 13, 2013 -- reflects not that plaintiff was "treated" for high anxiety, but that she "*report[ed]* she has been having high anxiety since the death of her mo[ther] in 2004," and the death of her grandmother in 2003, and that she has "a lot of stress" dealing with the father of her eighteen-year old and twenty-year old children. [AR at 392.] At that August 13, 2013, visit, Dr. Aoki recommended relaxation training, stress management classes, and "Managing Your Pain Training." [AR at 393.] Less than a week later, on August 19, 2013, Dr. Nguyen noted that plaintiff's anxiety disorder was "stable."[8] [AR at 390.] Plaintiff also suggests that on August 27, 2013, she was treated by Dr. Aoki for "fibromyalgia, insomnia, and anxiety disorder" [JS at 8], but the progress note reflects that her primary complaints at that visit were insomnia and pain. [AR at 387.] Similarly, plaintiff's suggestion that a July 28, 2014, "aftercare note" stating that insomnia "can be caused by conditions such as depression or anxiety" necessarily means that her fibromyalgia and insomnia were the "primary cause of her anxiety" and provides support that she suffers from anxiety, more importantly also fails to show that plaintiff has any *functional limitations* resulting from her acknowledged anxiety disorder that would significantly limit her abilities to do basic work-related

---

[8] Plaintiff states that Dr. Nguyen's note regarding plaintiff's stable anxiety disorder was dated the same day that Dr. Aoki treated her "for high anxiety." [JS at 8.] As discussed above, these were visits on two different dates, less than a week apart, and Dr. Aoki did not "treat" plaintiff for high anxiety, she merely reported plaintiff's statement that "she has been having high anxiety" since the death of her mother and grandmother approximately ten years before that visit. [AR at 392.]

activities. [AR at 575.] In fact, those generic aftercare instructions for patients suffering from insomnia also state that insomnia "is a common problem," and that pain and bad sleep habits can also cause insomnia. [Id.] Indeed, there is only one May 7, 2014, progress note from Dr. Nguyen that reflects plaintiff's "Low mood" and "Restricted affect" on examination. [AR at 546.] That note also reported that plaintiff "is nervous/anxious and has insomnia," but was "[n]egative for depression," her judgment was normal, and she made "[r]easonable eye contact." [Id.] Dr. Nguyen did not otherwise indicate any functional limitations as a result of this assessment. [Id.] Plaintiff points to nothing else in the record to show any functional limitations. [JS at 6-9.]

Based on the foregoing, the ALJ's determination that plaintiff's anxiety disorder was nonsevere was not error. Remand is not warranted on this issue.

**B.    SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 18.]

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis."[9] Trevizo, 871 F.3d at 678 (citing Garrison, 759

---

[9]    On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent
(continued...)

F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 24-29], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina, 674 F.3d at 1112); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the

[9](...continued)
truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p); see also JS at 18 n.6, 31 n.10.

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ acknowledged plaintiff's testimony alleging disability due to insomnia and widespread pain associated with fibromyalgia; difficulty lifting more than 10 pounds, walking more than half a mile, and doing prolonged exertional and postural activities due to leg and back pain; and needing frequent breaks while doing work at home. [AR at 27.] She determined that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible because those allegations are greater than expected in light of the objective evidence at the hearing level." [Id.] Specifically, the ALJ noted that plaintiff had engaged in work activity after the alleged onset date, indicating that her level of functioning *after* that date "had been somewhat greater than [plaintiff] had generally reported." [Id.] In light of plaintiff's statements that her part-time work required standing and walking around most of the time and that she had to miss several days of work due to pain and fatigue, the ALJ "considered and accommodated" her subjective complaints "with the exertional and postural restrictions, as well as the sitting and standing options," in the RFC. [Id.] The ALJ also noted that plaintiff's "minimal work history" *prior* to the alleged disability onset date "raise[d] some question as to whether [her] long-term unemployment was due to effects of her medically determinable impairments." [AR at 27-28.] The ALJ also considered plaintiff's activities of daily living, finding that they "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [AR at 28.] After reviewing some of her reported activities (caring for herself, preparing meals, doing household chores, driving, shopping, caring for her daughter's dog, handling funds and financial accounts, talking on the phone frequently, following instructions well, and enjoying reading and

watching television), the ALJ noted that plaintiff "has engaged in a largely normal level of daily activity independently, albeit with some need for breaks and rest due to pain and fatigue." [Id.] She also determined that the physical and mental capabilities necessary for performing many of these tasks, and the social interactions described by plaintiff, "replicate those necessary for obtaining and maintaining employment and they [are] within the [RFC] assessed in this Finding." [Id.] The ALJ further considered that plaintiff's medication regime was generally "conservative," and that her doctor encouraged her "to exercise and be more active, an indication that her doctor felt she was capable of some exertional activities that are inconsistent with a sedentary lifestyle that [plaintiff] alleged." [AR at 28.] With regard to plaintiff's alleged mental impairments, the ALJ noted that plaintiff "reported a number of activities of daily living and social interactions that are not consistent with a debilitating psychiatric condition." [AR at 25.] The ALJ concluded that plaintiff's ability "to participate in such activities and work on a part-time basis undermines the credibility of [her] allegations of disabling functional limitations" and she was able to work part-time as a playground supervisor, endorsing only physical limitations associated with that work. [Id.]

Plaintiff contends the ALJ's reasons for discrediting plaintiff's testimony were not specific, clear and convincing.

First, she argues that the fact that the ALJ discounted plaintiff's testimony both because plaintiff worked *after* the alleged onset date and also because she had a "minimal work history" *prior* to the alleged onset date, "makes no sense," and rhetorically asks "How can [the fact that] a person . . . actually tries to work albeit only a couple of hours a week, also be used as a reason not to find her credible." [JS at 20.] She further argues that none of the activities of daily living she engages in contradicts her testimony, or otherwise exceed the limitations she identified. [JS at 21.] Additionally, she argues that her level of activities "would not rise to the level of full time activity at any level of exertion," and "the ALJ's articulations are insufficient." [Id.] However, an ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s

testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim, 763 F.3d at 1165). Here, plaintiff testified that she works part-time as a playground supervisor, that she has missed several days of work because of her pain, and that she has "had situations" at work where she "almost passed out from walking around or standing too long" because the standing and walking is "just too much." [AR at 41-42.] She did not indicate any anxiety-related limitations with this job, and stated that when she experiences "dizzy spells, blackouts," or her legs giving out, she will sit down for a while. [AR at 45.] She noted that the school principal is very understanding and accommodating about her absences, tells her that she is "good at what [she] do[es]," and acknowledges that she has a good relationship with the children. [AR at 45-46.] She also stated that she worked at that school between 2004 and 2014 as a substitute teacher, and in 2013 they "permanently" hired her for the playground supervisor position. [AR at 46.] Based on the foregoing, the ALJ properly relied on the fact that plaintiff was working part-time, and otherwise engaged in various activities of daily living, albeit in a limited manner, as evidence contradicting her "claims of a totally debilitating impairment." Thus, this was a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

Next, plaintiff contends that although the ALJ is entitled to rely on a lack of objective evidence to support plaintiff's testimony, not only was there a "plethora of evidence in the records of constant complaints of insomnia, lack of sleep, anxiety, [and] irritability," but a "lack of objective medical evidence supporting the degree of limitation 'cannot form the sole basis for discounting pain testimony.'" [Id. (citing Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). Defendant responds that the ALJ's RFC finding was "more restrictive than all of the medical source opinions in the record," including plaintiff's doctors' objective findings and statements, and was based in part on the fact that the ALJ "did not disbelieve Plaintiff's statements about limitation." [JS at 22

(citing AR at 71-73, 80-82, 479-91).] Defendant notes that the consultative examining physician, Jay Dhiman, M.D., even questioned plaintiff's diagnosis of fibromyalgia when he found that she does not have any tender points required for that diagnosis. [JS at 24-25.] Defendant also notes that Dr. Dhiman found plaintiff could perform a wide range of medium exertion work with no sitting limitations, and that reviewing physicians N. Tsoulos, M.D., and B. Vaghaiwall, M.D., also found plaintiff capable of medium exertion work without limitation. [JS at 24-25 (citing AR at 28-29, 71-73, 81-82, 483).] Defendant asserts that despite those less restrictive opinions, the ALJ nevertheless included RFC limitations to accommodate plaintiff's subjective complaints, including the ability to stand and stretch every hour for one to three minutes per hour, and if standing, to sit every hour for approximately one to three minutes per hour. [JS at 24-25 (citing AR at 26, 29).] With respect to plaintiff's 2013 and 2014 medical records, defendant argues that plaintiff's diagnostic work-ups were unremarkable and, as noted by the ALJ, although plaintiff regularly sought treatment for persistent body pain, her 2014 records "contained 'no indication that her condition has worsened or that she required urgent or emergency care for intractable pain symptoms.'" [JS at 29 (citing AR at 29).] Additionally, although plaintiff's medical records indicate complaints of pain, "they did not indicate significant limitations that would preclude all work activity," and none of the medical opinions corroborated her disabling allegations. [JS at 30-31 (citations omitted).] While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (<u>Trevizo</u>, 871 F.3d at 679 (quoting <u>Robbins</u>, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. <u>See</u> <u>Burch</u>, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); <u>accord</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Here, however, the objective medical evidence simply does not support the degree of limitation supported by plaintiff. And, because the Court has already found that the ALJ properly relied on plaintiff's activities of daily living to discount her subjective symptom testimony, the lack of objective evidence is not the only reason relied on by the ALJ. Accordingly, this was a specific,

clear and convincing reason to discount plaintiff's testimony.

The ALJ also discounted plaintiff's allegations because other than conservative medications to treat her pain and anxiety, "she reported she did not like to take medications and was only using ibuprofen and Flexeril for pain management." [AR at 28.] Additionally, she continued to receive conservative medications, and although she was referred to a pain management program, she expressed more interest in being trained in stress-management techniques. [Id. (citations omitted).] As noted by the ALJ, plaintiff's doctor actually encouraged her to exercise and be more active, which implied that her doctor believed she was capable of activities that would be inconsistent with the "sedentary lifestyle that [plaintiff] alleged." [Id. (citing AR at 395).] An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). Accordingly, this was a specific, clear and convincing reason for discounting plaintiff's testimony of disabling limitations.

Based on the foregoing, the ALJ's subjective symptom testimony determination was "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding disabling limitations resulting from her pain and anxiety disorder. See Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).

/

/

## VI.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  March 26, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE